UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 0:26-cr-025-LMP-DLM |
| Plaintiff, | ) | |
| | ) | **GOVERNMENT'S** |
| v. | ) | **RESPONSE TO** |
| | ) | **DEFENDANT'S LETTER TO** |
| NEKIMA VALDEZ LEVY- | ) | **MAGISTRATE JUDGE** |
| ARMSTRONG, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The Government submits this brief in response to the request of defendants CREWS (7), TIER (36), and CULLARS-DOTY (16) for a status conference regarding the Government's recent production of discovery. (Dkt. 511). The Government believes a status conference is worthwhile so that the parties' competing concerns can be addressed with the benefit of the Court's wisdom and guidance. In preparation for the hearing, the Government offers the following points.

## DISCUSSION

### A. The Government's Production of Discovery and Its Long-Disclosed Redaction Efforts

On April 24, 2026, the Government provided defense counsel with notice that the Government's production of discovery materials was then available via the USAO's online discovery portal. The Government made that production

1

within the time set by the Court. The task proved Herculean, even with the Court's extension of the deadline. The discovery in this case is substantial, including over 8,000 pages of documents and over 900 media files. These materials include, *inter alia,* transcripts and reports of witness interviews, as well as digital recordings of such interviews and other matters.

In unredacted form, the documentary materials disclose a large amount of highly sensitive Personal Identifying Information ("PII") of victims and witnesses. Even in cases where a protective order is in place, it is common for documents of that type to be redacted to avoid improper public disclosure and general dissemination of the PII of victims and witnesses. That is especially true when, as here, some of the discovery materials — *e.g.*, video and audio recordings — cannot be redacted in any practical manner. As to those materials, a protective order is the only alternative to protect the victims and other witnesses. The use of a protective order, however, does not bar the Government from taking other steps to protect victim and witness PII.

Before getting to the propriety of its redactions, the Government must address the suggestion in defendants' letter that the Government negotiated the protective order in bad faith while secretly intending to make use of redactions as well. Specifically, defendants claim that the "Government . . . *never disclosed* to the defense or the Court" (*see* Dkt. #511 at 1, ¶ 2) that it was redacting discovery in addition to seeking a protective order.

That is untrue. To the contrary, the Government began redacting its discovery long before the protective order was negotiated and issued. It did so because it is a time-consuming task. Moreover, the Government's redaction of the documents was not concealed from defense counsel or the Court. The Government disclosed its redaction efforts openly and notoriously in multiple filings in this case.

On February 17, 2026, the Government mentioned its redaction efforts in support of its motion for a complex-case designation. (Dkt. 131). There, it said "the Government will need additional time — certainly more than seven-days — to process the discovery (e.g., **redact**, number-stamp, index the discovery)." (*Id.* at 5). When explaining the laborious, time-consuming process, the Government said that, "[w]hen discovery is loaded into Everlaw, Support Staff must individually **apply redactions** as needed." (*Id.* at 6). And it explained why those steps were needed: *"[The] (USAO) is taking steps to ensure that the Everlaw project is as helpful to defense counsel as reasonably possible, and that the dangers of harm to the safety and privacy of defendants and to third parties are minimized."* (*Id.* at 7). As the Government explained, "[t]hese steps typically include," among others, the following: *"USAO carefully reviews each **document to ensure that necessary redactions are made**, including sensitive personal identifiable information (especially as to Victims, but for the benefit of defendants, too)."* (*Id.*).

3

In that very same brief, the Government explained that, "[t]o expedite the preparation of discovery, the primary investigating agency in this case has devoted agents to assist USAO staff **with _redacting the documentary discovery_**." (*Id.* at 7-8). It further explained (again) that the goal was to be "protective of the interests of third-parties." (*Id.* at 8).

On March 18, 2026, the Government filed a renewed motion for a complex-case designation. (*See* Dkt. #391). That motion borrowed heavily from the above-quoted brief. The Government again explained that agents and paralegals have been working diligently to collect and prepare discovery for production, and that work included agents "*assist[ing] in **redactions** of documents* to assist in preparing some of the discovery." (*Id.* at 7). "When discovery is loaded into Everlaw," we said, "USAO paralegals must individually **_apply redactions_** *as needed*." (*Id.*). The Government further explained that, "[t]he USAO *carefully reviews each document to ensure that **necessary redactions are made***, including sensitive personal identifiable information (especially as to victims, but for the benefit of defendants, too). (*Id.* at 8).

The Government continued making open admissions to this effect even when arguing for reconsideration of the original protective order issued by the Court. On April 23, 2026, in the Government's motion for clarification or reconsideration of the protective order, the Government openly disclosed that

it was intending to produce redacted documentary discovery. (*See* Dkt. 504). "To be consistent with and provide necessary protection to victims and witnesses alike," the Government argued that "the Protective Order should make clear that ***the names of any victims and witnesses produced by the Government in discovery in <u>an unredacted form (if any)</u>***, or on a witness list, are included under the Protected Material definition of 'personal identifying information' (PII) in Paragraph 1(a) and thus subject to protection under the Protective Order." (*Id.* at 2-3).

## B.   <u>Under the Crime Victims' Rights Act, the Government's Redaction of Victim Identifiers Is Entirely Proper</u>

The Government has not violated Fed. R. Crim. P. 16 or the Court's protective order. The Government's approach to discovery in this matter has been guided by its obligations under the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771. Under the CVRA, victims possess statutory rights "to be reasonably protected from the accused" and "to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(1), (8). Federal prosecutors and investigative agencies are further obligated to use their "best efforts" to ensure those rights are honored throughout the criminal process. 18 U.S.C. § 3771(c)(1).

The CVRA imposes ***mandatory*** statutory duties upon the Government and on the district courts, too. In any case involving a crime victim, the CVRA

provides that "the **_court_** _shall_ ensure that the crime victim is afforded the [specified] rights." 18 U.S.C. § 3771(b)(1). If the Court and Government fail to afford such rights, the CVRA authorizes the victims to file motions for relief and, if necessary, a petition for a writ of mandamus with the appropriate court of appeals. 18 U.S.C. § 3771(d)(3). When the lack of compliance affects a hearing, the courts often have to redo the hearing (_e.g._, changes of plea, sentencing hearings, etc.). Moreover, the CVRA required the Attorney General to establish regulations to enforce compliance with the CVRA and provide for disciplinary sanctions for prosecutors and agents who "willfully and wantonly fail to comply" with the CVRA. 18 U.S.C. § 3771(f).

Thus, while the Court may perceive a viable compromise to balance the interests of all parties, the Government's position regarding the need for redactions is on solid legal ground. It is also based on a well-founded, good-faith concern for the victims and other witnesses. This case is unsettling. Numerous congregants and witnesses were recorded during a religious worship service without their consent, and their images and identities were disseminated through social media and other public platforms. Moreover, the Cities Church continues to be harassed by like-minded protestors, causing the victim-congregants to face a gauntlet of abuse every week just because they want to attend Sunday morning worship services.

In light of these facts, the Government long ago began redacting its discovery materials to protect sensitive PII of victims (including minors), other witnesses, and federal law enforcement personnel. Those efforts were undertaken in good faith, not to obstruct the defendants' ability to evaluate the evidence and prepare for trial. The Government believes the redactions are required to properly satisfy its duties under the CVRA and to protect witnesses and federal agents from illegal intimidation and harassment.

As noted above, the circumstances of this case present unique risks to the victims as well as third-party witnesses and federal investigators. The offense conduct charged in this case was essentially part of an effort to doxx an ICE agent. Following well-known rules for radicals, the defendants identified the ICE agent and then tried to target, isolate, intimidate, and ostracize him by harassing him, his family, and the other victims (fellow church members) for daring to even associate with the agent. The implied threat to all other ICE agents was as clear as it was intended: You're next.

Their images and identities were subsequently disseminated through social media and other public platforms. Since the incident, protest activity directed at the church and its congregants has continued on a recurring basis. Many victims and witnesses have expressed ongoing concerns regarding harassment, targeting, retaliation, and public exposure. Because of the continued protest presence, those concerns are neither speculative nor

7

abstract. The Government, therefore, determined that careful redaction of names, PII, and other sensitive information was necessary while the parties negotiated and finalized an appropriate protective order governing disclosure.

Though the Government implicitly trusts defense counsel, as fellow members of the bar, it would be irresponsible for the Government to ignore the facts of this case and the aggressive tactics of modern protestors and simply trust that the *defendants* (and their associates) will honor the basic norms of decency and civility that they violated on January 18, 2026. The Government doesn't want the victims and other witnesses doxxed, intimidated, and harassed. *See* 18 U.S.C. § 1512 (prohibiting witness tampering). It also doesn't want federal agents who have worked on this case to be subjected to any such harassment. As to its concern for federal agents, the Government's position has strong legal support as well. *See, e.g.*, 18 U.S.C. § 372 (it is a federal crime to "conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office . . . under the United States, or from discharging any duties thereof," etc.).

For all of these reasons, the Government submits that the redaction of the names and other PII of victims and other witnesses, including law enforcement officers, is necessary and proper. The Government has an obligation to act reasonably and responsibly in protecting both victims and

third-party witnesses, including federal agents, from unnecessary disclosure of sensitive PII under these circumstances.

The Government was not required to stop making redactions just because it was also negotiating a protective order. As noted above, the protective order serves other purposes beyond the documentary discovery. Audio and video recordings cannot easily be redacted, especially given the large number of recordings in this case.

Moreover, the existence of a protective order does not eliminate the need for reasonable redactions of documents to ensure the safety of victims and other witnesses. Routinely, protective orders function as an additional safeguard, layered upon necessary redactions to prevent unnecessary dissemination of sensitive information. And it must be said that, as of this writing, over half of defendants and defense counsel have not yet provided signed certifications of "Attachment A" of the Protective Order. Only seventeen defendants *or* counsel (as of this writing) have returned *any* signed certifications of "Attachment A." Only nine defendants *and* their counsel have both returned signed "Attachment A" certifications.

Further, Rule 16 does not require disclosure in the precise manner preferred by defendants. Nor does the Court's protective order prohibit the Government from taking reasonable additional steps to protect victims, witnesses, minors, and law enforcement personnel.

Defendants' suggestion that the discovery produced to date is "virtually useless" is incorrect. Defendants are fully able to review the substance of the allegations, evaluate the evidence, assess the Government's legal theories, prepare motions, and otherwise prepare their defense. Indeed, defense counsel claim that the discovery has revealed that certain people in the church claim they were not placed in fear by the defendants' conduct. (*See* Dkt. #511). The fact that the names and PII of witnesses have been redacted does not render the discovery unusable, and it certainly does not violate Rule 16.

The Government intends to provide unredacted disclosures for witnesses it reasonably anticipates calling at trial (except for minors), subject to appropriate timing considerations, protective safeguards, and (of course) this Court's orders. As to witnesses whom the Government does not reasonably anticipate calling at trial, the Government continues to evaluate appropriate disclosure mechanisms consistent with victim privacy, witness safety, and the Government's obligations under the CVRA.

In an effort to further balance the needs of the defendants with the substantial victim-safety and privacy concerns in this case, the Government submits that a modification to the existing protective order might help. The Government could have agents contact all of the *adult* victim-witnesses who were at the church on January 18, 2026 and who have already been interviewed by state or federal investigators, and ask whether they would be

10

willing to talk with defense counsel if any defense attorney wanted to interview them. That inquiry would be consistent with the CVRA, which provides that the Government may confer with victims about their rights. *See* 18 U.S.C. § 3771(a)(5). For those victims who respond affirmatively, the Government could provide defense counsel with a list of their names or copies of the relevant reports where the names would not be redacted, but any such list or partially unredacted report would be for the eyes of the defense attorneys and their investigators only, not any of the defendants. If, after being advised of their rights, a victim gives permission to share their names with defense counsel, the Government would disclose their names. Under such a framework, the names of such witnesses would be available only to defense counsel and defense investigators, who would be ordered to not share them with any defendant.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

11

## CONCLUSION

In summary, the Government's good-faith efforts to protect the privacy and safety of victims and other witnesses through the redaction of names and other PII is not a discovery violation.

DATED: May 11, 2026.

DANIEL N. ROSEN
United States Attorney

FLAVIO DE ABREU
JOHN R. ARBOLEDA
Special Assistant United States
Attorneys

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

ROBERT J. KEENAN
Acting Deputy Assistant Attorney General

NEVILLE S. HEDLEY
Senior Trial Attorney

KELSEY MCGEE
Trial Attorney

   */s/ Robert J. Keenan*
Robert J. Keenan
  Civil Rights Division
  U.S. Department of Justice
  950 Pennsylvania Ave. NW
  Washington, DC 20530
  Telephone: (202) 305-2566
  E-Mail: robert.keenan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

12